# UNITED STATES DISTRICT COURT
for the
Western District of Washington

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*
The Residence and Smartphone of Dion Jamar Cooper

)
)
)
)
)
)

Case No.   MJ23-165

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is incorporated herein by reference

located in the _____ Western _____ District of _____ Washington _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 922(a)(6); 18 U.S.C. 924(a)(1)(A); | False Statement in Connection with Acquisition of a Firearm |
| 18 USC 371 | False Statement During the Purchase of a Firearm |
|  | Conspiracy |

The application is based on these facts:

✓   See Affidavit of Special Agent Catherine Cole continued on the attached sheet.

☐   Delayed notice of _____ days (give exact ending date if more than 30 days: _____   is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

CATHERINE COLE   Digitally signed by CATHERINE COLE
Date: 2023.04.10 11:17:50 -07'00'

*Applicant's signature*

Catherine Cole, Special Agent, ATF
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: _____ 04/11/2023 _____

*Judge's signature*

City and state:   Seattle, Washington

Brian A. Tsuchida, United States Magistrate Judge
*Printed name and title*

## <u>ATTACHMENT A</u>

### Description of Residence and Person to be Searched

**<u>SUBJECT RESIDENCE</u>**:  The physical address for the **Subject Residence** is 25819 26th Place South, Apartment B204, Kent, Washington 98032. It is an apartment building in a multi-family apartment complex. The siding on the building is gray and beige. The front door faces south and has white trim. The number "B 25819" is posted in white on the exterior of the building facing the parking lot. The number "204" is posted in white on the east side of the exterior of the building indicating Apartment B204 is located on the second floor of the building. Below is a recent photograph of the front exterior of the **Subject Residence**.





**<u>SUBJECT PERSON</u>**:  A male person in the name of DION JAMAR COOPER, with a date of birth in 1991, Black/African American, approximately 6'2 inches in height, and 180 pounds in weight.

## ATTACHMENT B

### List of Items to be Searched For and Seized

From the **Subject Residence** and **Subject Person** identified in Attachment A, the government is authorized to search for and seize all records relating to violations of Title 18, United States Code, Sections 371 (Conspiracy to Violate the Gun Control Act), Title 18, United States Code, Section 922(a)(6) (False Statement in Connection with the Acquisition of a Firearm), and Title 18, United States Code, Section 924(a)(1)(A) (False Statement During the Purchase of a Firearm), involving DION JAMAR COOPER and occurring from June 2021 through the present, including:

1. Firearms, ammunition, and firearm accessories;

2. Records relating to firearms and firearm purchases and transactions, such as photographs, videos, ledgers, receipts, notes, owner's manuals, invoices, packaging labels, firearms boxes and other containers, and Firearms Transaction Records (ATF Form 4473s);

3. Records that tend to identify the person(s) in residence, occupancy, control, or ownership of the **Subject Residence**, including canceled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, statements, and identification documents;

4. Smartphones and wireless communications devices may be searched for:

    i. Assigned number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);

    ii. Stored list of recent received, sent, or missed calls;

    iii. Stored contact information;

    iv. Photographs and videos of firearms, and photographs and videos that may show the user of the phone and/or co-conspirators, including any embedded GPS data associated with these photographs or videos;

    v. Stored and active text or chat messages related to firearms, including Apple iMessages, Facebook Messenger, Snapchat, Whatsapp,

Signal, or other similar messaging services where the data is stored on the telephone.

vi.    Communications between COOPER and other persons relating to firearms possession, purchases, and sales;

vii.    Records relating to firearms or firearm transactions;

viii.    Records relating to COOPER's firearm purchases;

ix.    Records indicating state of mind regarding aforementioned crimes of investigation, including knowledge of another person's ineligibility to possess or purchase firearms;

x.    Records showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the ATF may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

During the execution of the search of any Apple brand device(s) (such as an iPhone or iPad) or Android Device(s) which law enforcement has reasonable suspicion to believe are in the possession or control of Cooper:  For the purpose of attempting to unlock the device(s) via biometric authentication in order to search its contents as authorized by this warrant, law enforcement personnel are authorized: (i) to press the fingers, including thumbs, of Cooper to sensors of the device(s), using no more than reasonable force, or (ii) to hold up the device(s) in front of the face of Cooper.

# AFFIDAVIT

STATE OF WASHINGTON )
)   ss
COUNTY OF KING )

I, Catherine Cole, being first duly sworn on oath, depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

I am a Special Agent with the United States Department of Justice (DOJ), Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been so employed since December 29, 2013. I am currently assigned to the Seattle Field Division in Seattle, Washington where I am assigned to the Seattle V Field Office. In this capacity, I enforce federal criminal laws relating to the unlawful possession, use and trafficking of firearms. I also investigate individuals who illegally use firearms to commit violent crimes.

Prior to my employment with ATF, I obtained bachelors' degrees in Political Science with a concentration on international relations and French from Tulane University in New Orleans, Louisiana, and a master's degree in Natural Resources Law Studies from the University of Denver College of Law in Denver, Colorado.

I received formal training at the Federal Law Enforcement Training Center in Glynco, Georgia, Criminal Investigators Training Program, which familiarized me with basic narcotic investigations, drug identification and detection, United States narcotics laws, financial investigations and money laundering, identification and seizure of drug-related assets, organized crime investigations, physical and electronic surveillance, and undercover operations. In addition, I successfully completed a fourteen-week ATF Special Agent Basic Training course in Glynco, Georgia, which included comprehensive,

AFFIDAVIT OF CATHERINE COLE – Page 1
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

1  formalized instruction in, among other things: firearms identification, firearms

2  trafficking, arson and explosives, and tobacco and alcohol diversion.

3       I have also received several hours of specialized training in surveillance

4  techniques, narcotics investigations, gang investigations, and am a certified Interstate

5  Firearms and Ammunition Nexus Expert, who has been trained in the recognition of

6  firearms and ammunition and their origin of manufacture. In this capacity, I have

7  received formal training for law enforcement personnel in both a general and specific

8  nature as it pertains to the recognition and identification of firearms and ammunition and

9  their place of manufacture. This training includes, but is not limited to, the Criminal

10  Investigator Training Program, Federal Law Enforcement Training Center, Special Agent

11  Basic Training, ATF National Academy, with emphasis on the Gun Control Act (GCA)

12  and the National Firearms Act (NFA) and the recognition of firearms pertaining to each,

13  Firearms Interstate Nexus Training, Advanced Ammunition Nexus Training, and the

14  touring of firearms manufacturing plants and ammunition manufacturing plants. I have

15  also personally toured and examined the ATF Firearms and Ammunition Technology

16  Branch's Reference Collection, located in Martinsburg, West Virginia, which includes an

17  inventory of approximately 13,000 firearms.

18  **RESIDENCE AND PERSON TO BE SEARCHED**

19       The applied-for warrant relates to an investigation of Dion Jamar Cooper for

20  purchasing firearms on behalf of other people while falsely representing himself as the

21  true buyer of the firearms, in violation of Title 18, United States Code, Sections 371

22  (Conspiracy to Violate the Gun Control Act); Title 18, United States Code,

23  Section 922(a)(6) (False Statement in Connection with the Acquisition of a Firearm); and

24  Title 18, United States Code, Section 924(a)(1)(A) (False Statement During the Purchase

25  of a Firearm).

26       This affidavit is submitted in support of an application for a search warrant

27  authorizing the search of the following residence and person:

28

AFFIDAVIT OF CATHERINE COLE – Page 2
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

a.   <u>**Subject Residence**</u>: The physical address for the **Subject Residence** is 25819 26ᵗʰ Place South, Apt. B204, Kent, WA 98032. It is an apartment or condominium unit within a multi-family residential complex with gray and beige siding.

b.   <u>**Subject Person**</u>:  A Black male person in the name of Dion Jamar Cooper, with a date of birth in 1991, approximately six feet, two inches in height, and 180 pounds in weight.

Based upon the facts set forth below, there is probable cause to search the **Subject Residence** and the **Subject Person**, as described above and in Attachment A, for evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 371, 922(a)(6) and 924(a)(1)(A), as described in Attachment B.

The facts in this affidavit are based on my training and experience, and information obtained from other agents, detectives, officers, analysts, and witnesses. The information outlined below is provided for the limited purpose of establishing probable cause for the applied-for search warrant and does not contain all details or all facts of which I am aware that relate to this investigation.

## **PROBABLE CAUSE**

### **Identification of Cooper as a Potential Straw Purchaser**

On January 29, 2023, an armed robbery occurred in the Rainier Valley area of Seattle, Washington. During the robbery, a 25-year-old Asian female victim had just arrived home and was unloading her car when three unidentified black males approached her. One of the males pointed a handgun at her and demanded her belongings as another suspect got in the driver's seat of her car. The victim handed over her phone and purse and the suspect punched her multiple times. The suspect in the driver's seat was unable to start the car and exited the vehicle. Fearing for her life, the victim jumped back in her car, locked the doors, and drove away. The suspects chased her in a white sedan, but she was able to elude them and eventually called 911. Officers with the Seattle Police Department (SPD) responded but could not locate the suspects. The victim located a handgun – a

AFFIDAVIT OF CATHERINE COLE – Page 3
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

1  Glock Model 22 .40 caliber pistol – that the suspect dropped when he got inside her
2  vehicle and SPD officers recovered it.

3      Officers processed the firearm and submitted the information into a database of
4  firearms that had been recovered in crimes ("crime guns"). The database assists law
5  enforcement by tracing the purchase of a firearm back to its original purchaser, thereby
6  providing potential investigative leads following crimes during which firearms are
7  recovered. According to the crime gun database, the original purchaser of the recovered
8  Glock pistol was Dion Jamar Cooper, date of birth in 1991. Cooper purchased the firearm
9  50 days earlier, on December 10, 2022, from Ben's Loans, a pawnshop located in
10  Renton, Washington. SPD officers learned from other law enforcement databases that
11  Cooper was linked to more than additional 80 firearm purchases and had a now-expired
12  Concealed Pistol License (CPL).

13                      **Cooper's Firearm Purchase History**

14      After learning about this this robbery incident and the other information about
15  Cooper, I suspected he may be a "straw purchaser" of firearms (*i.e.,* someone who
16  purchases firearms on behalf of other people). Although Cooper has been arrested for
17  various offenses, including domestic violence, theft in the third degree, burglary,
18  rendering criminal assistance, assault in the second degree (domestic violence), and
19  possession of a stolen firearm, he has no criminal convictions. Therefore, he is not a
20  "prohibited person" and may legally possess firearms.

21      I began to investigate Cooper's firearm purchase history and the extent to which
22  the firearms he purchased have been recovered and linked to crimes through the crime
23  gun databases. I learned that Cooper has purchased at least 107 firearms from various
24  Federal Firearms Licensees (FFLs) around the greater Seattle area during the period from
25  June 2021 through March 2023. Approximately 24 of these transactions involved
26  multiple sales, meaning Cooper bought two or more firearms during the same

27
28

1   transaction.[1] Many of these sales included purchases of four or more firearms. Many of
2   the firearms that Cooper purchased were of similar makes and models, and in several
3   cases the exact same makes and models. Cooper purchased these firearms from at least
4   nine FFLs.[2]

5        Of the at least 107 firearms Cooper purchased since June 2021, approximately 21
6   of those firearms have been recovered in crimes and traced. At least three additional
7   firearms that were purchased by Cooper were recovered in criminal investigations but
8   had not yet been submitted for tracing. All but two of these recovered firearms were
9   found in the possession of someone other than Cooper, and usually the possessor was
10   prohibited from possessing firearms.

11        The "time-to-crime" for the traced firearms (*i.e.,* the amount of time between the
12   retail sale of a firearm and its recovery by law enforcement after the commission of a
13   crime) ranged from between two days and 268 days. ATF considers a time-to-crime of
14   less than three years as a potential indicator of firearms trafficking. Significantly, I was
15   not able to find a single instance in which Cooper reported any of these firearms lost or
16   stolen.

17        Based on my training and experience, several aspects of Cooper's firearm
18   purchases are consistent with straw purchasing, including: the large number of firearms
19   that Cooper purchased in a short period of time; the fact that he would purchase multiple
20   firearms of the exact same make and model during the same transaction and over several
21   transactions; and that a large percentage of the guns he purchased ended up recovered at
22   crime scenes in the possession of other persons with a relatively short time-to-crime span.

23        When a person purchases a firearm from an FFL, that person is required to
24   complete an ATF Form 4473. This is the form that is used to initiate the background

25

26   ---
    [1] Because not all multiple sales were reported by the FFLs, the number of firearms Cooper purchased is likely higher
27   than 107.

28   [2] There is no national registry of firearm purchases, so agents must identify firearm purchases by obtaining records
    from individual FFLs. Agents intend to investigate whether Cooper has purchased firearms at additional local FFLs.

AFFIDAVIT OF CATHERINE COLE – Page 5
USAO No. 2023R00390

check on the purchaser. Among other questions, the ATF Form 4473 asks whether the person completing the form is the "actual transferee/buyer of the firearm(s) listed on the form." The ATF Form 4473 further states in Box 21, Section a.: "**Warning: You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you.**" A person who answers this question falsely by affirming that he or she is the true buyer of the firearm when he or she is actually purchasing the firearm on behalf of another person has violated Title 18, United States Code, Sections 922(a)(6) and 924(a)(1)(A), by making a material false statement in connection with the acquisition of a firearm.

I reviewed the ATF Form 4473's related to Cooper's purchases of the above-referenced firearms. In each instance, Cooper indicated and checked the box affirming "yes" for Box 21, Section a., declaring he was purchasing the firearms for himself.

## Evidence that Cooper is Straw Purchasing Firearms for Others

The Seattle Police Department is investigating members of a Seattle street gang known as the "Sleeze Gang" for various criminal activities including theft of motor vehicles and using stolen vehicles to commit violent crimes such as carjackings, assaults, and armed robberies. Among other members of the gang, SPD has identified Sean Langan (aka "SG"), Jahaz Phillips (aka "jsleeze"), and Benjamin Luzaya (aka "suppasleeze3gk") as being involved in these criminal activities.

In February and March 2023, SPD detectives obtained state search warrants authorizing the search of the contents of Langan's and Luzaya's Instagram accounts. The contents of these Instagram accounts contain several conversations involving Luzaya, Langan, and other members of the Sleeze Gang during which they discussed acquiring firearms. Some of these conversations are summarized below.[3]

---

[3] During these conversations, the speakers consistently referred to firearms with code words. I know from my training and experience that people who commit crimes and attempt to acquire firearms through non-legal channels often speak of firearms in code to avoid detection by law enforcement officers who may be monitoring their

AFFIDAVIT OF CATHERINE COLE – Page 6
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

### a.  Instagram Conversation on January 18, 2023.

On January 18, 2023, user "jpsleez_1185" asked another user, "russianhitman5," to "Get me a geezy [firearm] bro." User "russianhitman5" replied: "Get it from sg kousin who get em out da store. … He got jsleez 40." Later in the conversation, user "jpsleez_1185" confirmed: "And sg kousin already got the g23."

As noted above, "SG" is the known moniker for Sean Langan and "jsleez" is the known moniker for Jahaz Phillips. Therefore, my understanding of this conversation is that "russianhitman5" stated that Langan's cousin purchases firearms at FFL stores and had obtained a .40 caliber pistol for Phillips; and that "jpsleez_1185" stated Langan's cousin had recently purchased a Glock Model 23 pistol.

For the following reasons, I believe that the reference to Langan's cousin who purchases firearms is a reference to Dion Cooper.

First, my review of law enforcement databases suggests that Langan and Cooper are, in fact, related. Both Cooper's mother and Langan's mother have the middle (maiden) name of Watkins, suggesting they are sisters, which would make Langan and Cooper first cousins.

Second, consistent with the reference to Langan's cousin having purchased a Glock Model 23 pistol, I confirmed that Cooper, in fact, had recently purchased that same type of pistol at an FFL two days prior to the Instagram conversation, on January 16, 2023.

Third, consistent with the reference to Langan's cousin having acquired a firearm from a "store" for Phillips, I confirmed that, a few days prior to the Instagram conversation, Cooper had purchased a Glock Model 21 .45 ACP caliber pistol. Nineteen days later, on February 4, 2023, Phillips was arrested in possession of this same pistol.

//

//

commutations. Some of the code words people tend to use in referring to firearms include, but are not limited to, "pole," "banger," "slam," "heat," "blower," and "chop," which refers to AR- and AK-type variant pistols and rifles.

AFFIDAVIT OF CATHERINE COLE – Page 7
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

### b.  Instagram Conversation on January 25, 2023.

On January 25, 2023, Luzaya (using moniker "suppasleeze3gk") told user "lilrowdy206": "Meet me in Renton…At the gun store…Meet me at Ben loans…That's where I'm otw [on the way] to rn [right now]." User "lilrowdy206" replied by askng: "Who all with you?" Luzaya responded, "My big cousin… And his bro."

This again appears to be a reference to Cooper purchasing firearms. I obtained records from Ben's Loans, including an ATF Form 4473, indicating that Cooper applied to purchase four Glock handguns on that same date, January 25, 2023.

### c.  Instagram Conversation on January 23, 2023.

On January 23, 2023, user "sf_topoppbackdoe" told Langan (using moniker "hotboymuney-sg"): "I need a banger bro." Langan replied: "My cousin gets heats out the store." I believe this is another refernce to Cooper purchasing firearms for other people.

### d.  Instagram Conversation on January 25, 2023.

On January 25, 2023, user "wslttaygunna" asked Langan, "Who kan go in gum [sic] store?" Langan responded, "I can get shit out tha store… What U want." User "wslttaygunna" replied: "Glock 17." Langan stated, "I'm gonna go to the store rn [right now] wit the nigga." They then discussed prices for the firearm, with Langan ultimately stating, "This nigga says he needs 8 [$800]. … I'll see if I can talk the nigga to 770."

Again, this appears to be a reference to Cooper purchasing firearms. I obtained records from Ben's Loans, including an ATF Form 4473, indicating that Cooper applied to purchase four Glock handguns, including a Glock Model 17 9mm caliber pistol, on that same date, January 25, 2023.

### e.  Instagram Conversation on January 20, 2023.

On January 20, 2023, Langan ("hotboymuney_sg") and Cooper (using the monker "sleezereaper") spoke over Instagram's chat platform and later by video connection.[4] During the video portion of the conversation, it appeared that Cooper was speaking into a

---

[4] I was able to identify Cooper as "sleezereaper" because, during the video portion of their conversation, screenshots depicted both Langan and Cooper in video squares speaking with each other.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

smartphone set in "selfie" video mode. During this conversation, Cooper seemed to be complaining to Langan that he (Cooper) had not been receiving the proceeds of Langan's firearm sales involving guns purchased by Cooper.

At the beginning of the conversation, Langan stated: "I'm Trinna (trying to) get sum money to give u." Cooper later stated:

> Cuddy, I'm not mad about the switch that's yours. I'm mad you took the chop (firearm) and I ain't get nun outta it. … I just wanna know wussup wit chu. … I put you and your niggas on wit fat lick and you can't even answer the phone? That shit fake as hell. … We ain't gotta fight but if I catch you and you don't have no Glock or cash for me then we gotta fight. … [Y]our acting like we ain't blood folks. Call me cuddy cuz niggas is looking for me for all that shit and I'm naked. You gonna do me like this? I love you cuddy. Just call me.

Langan replied: "Kuddi I was trinna get sum Bread so u would not be mad at me. … I'm sellin the chop and giving u half."

### Surveillance Operation Conducted on Cooper

On March 16, 2023, J.L., an employee at Rehv Arms, an FFL located in Covington, Washington, contacted me to report that Cooper had filed an application to purchase three firearms and was undergoing a standard background check. The FFL was waiting for Cooper to call them to arrange to pick up the firearms. According to J.L., Cooper stated that he did not have a phone but would check with the FFL every few days about the status of the background check. J.L. later told me that Cooper was scheduled to come to the store to obtain the firearms on March 21, 2023.

On that date, ATF agents conducted physical surveillance of Cooper during and after the firearms transaction at Rehv Arms. Cooper arrived at the store as the passenger in a dark colored Chevrolet Tahoe SUV registered to De'Ondre Lamontia Phillips, a convicted felon. Agents were able to positively identify Phillips as the driver of the Tahoe.

Cooper exited the passenger seat of the Tahoe and entered Rehv Arms alone, while Phillips stayed in the vehicle. Cooper later exited the store carrying a large

AFFIDAVIT OF CATHERINE COLE – Page 9
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

1  cardboard box. He loaded the box into the Tahoe reentered the passenger seat. The Tahoe

2  then departed the store parking lot and drove to a Chevron gas station in Kent,

3  Washington. There, Phillips conducted a brief hand-to-hand transaction with an unknown

4  black male. This male approached the Tahoe and began counting money. Phillips

5  exchanged an unknown item for the cash.

6       The Tahoe then drove to an apartment in Federal Way, Washington. Phillips

7  opened the garage door to the apartment, went inside the garage for a few minutes, and

8  then returned to the Tahoe carrying a silver shopping bag. The Tahoe then drove to a

9  Wendy's restaurant and ultimately to Cooper's residence at 25819 26th Place South,

10 Unit B204, Kent, Washington (the **Subject Residence**). Cooper exited the passenger seat

11 of the Tahoe carrying a black backpack, multiple brown paper bags, and take-home food

12 containers. Cooper entered the apartment and went inside.

13      I later obtained the completed Form 4473 that Cooper filled out at Rehv Arms. It

14 reflected that Cooper purchased eight firearms instead of the three he had initially

15 requested. I believe these eight firearms were in the box that Cooper carried out of Rehv

16 Arms and loaded into the Tahoe. Cooper did not take the box out of the Tahoe when he

17 entered his apartment.

18           <u>**Interviews with Ben's Loans and Rehv Arms Employees**</u>

19      I went to Ben's Loans in Renton, Washington, to collect numerous ATF Form

20 4473s from M.Z., an employee. I showed M.Z. Cooper's Washington driver's license

21 photo, and M.Z. confirmed that the person depicted in the photo was who she knew as

22 "Dion." M.Z. told me that she is very familiar with Cooper and that recently he

23 exclusively dealt with her in terms of his firearms purchases at Ben's Loans. M.Z. said

24 Cooper "seemed a little bit out of it lately," but that he never smelled like alcohol or

25 marijuana when he came in to buy firearms. M.Z said Cooper always paid for the guns

26 with cash and that he always got a ride to Ben's Loans from someone else. M.Z.

27 described a dark colored SUV that Cooper was associated with, which often drove him to

28

AFFIDAVIT OF CATHERINE COLE – Page 10
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

1   the store and parked in the stall furthest away from the store entrance. This vehicle

2   matches the description of Phillips' Tahoe, as described above.

3       I also went to Rehv Arms to speak with the employees about Cooper. I asked them

4   to describe typical interactions with Cooper. One employee, S.M., said when Cooper first

5   began patronizing the store, S.M. thought he was either high on marijuana or just "slow."

6   S.M. later came to believe Cooper "was being taken advantage of" and that he "wasn't

7   very smart." S.M. explained that the first time he came into Rehv Arms to purchase a

8   firearm, Cooper video-recorded the entire transaction on his phone. Cooper walked

9   around the store recording the shelves and gun cases as if he was recording the store's

10  inventory. According to S.M., on other occasions, Cooper was on Facetime speaking with

11  other unidentified males and showing them firearms over Facetime for them to comment

12  on. S.M. said Cooper typically comes into the store alone, but during one transaction in

13  February 2023, he was accompanied by two unknown males who were asking the staff

14  about purchasing machineguns.

15      S.M. stated Cooper has a phone, but that Cooper told him he can only use the

16  phone in WiFi hotspots. S.M. said Cooper always pays in cash and that he tries to "max

17  out" the cash he has on hand by spending it all during the transactions. For example,

18  Cooper will go in and purchase items and if he has any cash leftover, he will spend it on

19  something else like another firearm or accessories.  The employees had only seen Cooper

20  arrive at the store in a dark-colored SUV.

21      S.M. explained that during one recent transaction, S.M. took the opportunity to

22  advise Cooper of recent changes to the ATF Form 4473 (which was revised in December

23  2022). S.M. told Cooper, "Hey man, you're buying these for yourself, right?" Cooper

24  replied something to the effect of, "Yep, they're all for me." S.M. described another

25  interaction with Cooper when S.M. noticed Cooper was buying duplicate makes and

26  models of firearms that he had previously purchased. S.M. asked Cooper what happened

27  to the guns he previously bought, to which Cooper responded something to the effect of,

28  "I lost a bunch of them," and, "All my shit got stolen."

AFFIDAVIT OF CATHERINE COLE – Page 11
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

1    I asked staff members what they believed Cooper was doing with the firearms he
2    purchased. They opined that he is likely selling them to other people. Based on S.M.'s
3    experience as an FFL employee, he was concerned that Cooper had falsely represented
4    himself as the actual buyer of the firearms and was actually purchasing firearms for
5    others to possess.

6    Based on my training and experience, I believe several aspects of Cooper's
7    purchases are consistent with straw purchasing, including: the large number of firearms
8    that Cooper purchased in a short period of time; that he purchased multiple firearms of
9    the exact same make and model during the same transaction and over multiple
10   transactions; that a large percentage of the guns he purchased ended up recovered at
11   crime scenes in the possession of other persons with a relatively short time-to-crime span;
12   that he paid in cash; that he was accompanied to the FFLs by other people who waited in
13   the parking lot instead of joining him inside the store; and that he communicated with
14   others by Facetime during some of the transactions.

15   **Cooper's Recent Applications to Purchase Additional Firearms**

16   In early April 2023, investigators obtained a state tracking warrant for Phillips'
17   Tahoe. The tracking data documented that on April 4, 2023, the Tahoe went to Cooper's
18   apartment (the **Subject Residence**) and then drove to Ben's Loans FFL. On April 5,
19   2023, the Tahoe drove to the **Subject Residence** at 10:20 a.m. The Tahoe then drove to
20   the location of Ben's Loans FFL, arriving at 10:57 a.m. The Tahoe later drove to the
21   location of the Rehv Arms FFL, arriving at 12:45 p.m. The Tahoe eventually returned to
22   the **Subject Residence** at 8:07 p.m.

23   I spoke with employees at Ben's Loans who confirmed that Cooper was at the FFL
24   on April 4th and April 5th. On April 5th, Cooper filled out an ATF Form 4473 for the
25   purchase of an Anderson Arms Model AM-15 AR-style pistol. On April 4th Cooper
26   completed the paperwork to purchase four additional pistols: a Smith and Wesson Model
27   M&P 15 AR rifle, two Glock 17 9mm caliber pistols, and a Glock 23 .40 caliber pistol.
28

AFFIDAVIT OF CATHERINE COLE – Page 12
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

1  Cooper provided a new telephone number for the FFL to contact him after the
2  background checks were completed.

3        I also spoke with employees at Rehv Arms who confirmed that Cooper was at the
4  FFL on April 5th. Cooper filled out an ATF Form 4473 for the purchase of a Glock 21
5  10mm caliber pistol. The employees also informed me that on April 1st, Cooper was at
6  the FFL and requested them to build a firearm out of an AR upper receiver that Cooper
7  provided. Cooper provided the same new telephone number for the FFL to contact him.

8                                   **Cooper's Smartphone**

9        As described above, S.M. at Rehv Arms noticed that Cooper used a smartphone
10  during some of the firearm transactions to video record firearms and to communicate
11  with unknown persons about the firearms. Cooper also used his phone to conduct the
12  video chat with Langan during which they discussed firearms sales and possession.
13  Additionally, Cooper has provided a phone number to FFLs so they could notify him
14  when his background checks and waiting periods were completed.[5]

15        Based upon my training and experience, I know the following about private
16  firearm sales, including private sales occurring in illegal secondary markets:

17            a.    A prohibited person cannot legally purchase a firearm from an FFL.
18                  Two of the ways that a prohibited person can illegally acquire a
19                  firearm are through a private sales or straw purchases.

20            b.    When a person sells a firearm through a private sale, his phone will
21                  commonly maintain records reflecting names or nicknames,
22                  addresses, vehicles, and/or telephone numbers of the person to
23                  whom he sold the firearm. The phone will commonly contain

24
25
26
_____
27  [5] The service provider of this phone number is Qwest Corporation; however, the number is listed as an inactive
    landline. The employees at Rehv Arms believed Cooper used a mobile app to call from WiFi hotspots which
28  jumbled the caller's number, because when he called to check on the status of his background checks, the number he
    called from was always a different number. Cooper also made statements to the employees that he had a phone but
    could only use it to call from WiFi hotspots.

AFFIDAVIT OF CATHERINE COLE – Page 13
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

communication records, such as call logs or text messages, arranging to pick up the firearm and negotiating the price of the firearm.

    c.    When a person sells a firearm, it is common for the seller to send the buyer a photograph of the firearm. Similarly, a prohibited person might send a photograph or other details about a firearm to the straw buyer so that the straw buyer knows which type of firearm to purchase for the prohibited person.

    d.    When a straw buyer arranges to purchase a firearm on someone else's behalf, he is likely to keep records of those transactions, such as co-conspirator contact information, receipts, notes, ledgers, owner's manuals, and communications arranging the purchase, payment, and transfer of the firearm. One of the places that these records are commonly kept is a straw purchaser's residence; the other common place is a straw purchaser's wireless phone.

    e.    In addition to text messages and phone calls, it is common for people to arrange firearm sales by communicating through social media applications, such as Snapchat, Instagram, and Facebook.

For the foregoing reasons, there is probable cause to believe that Cooper has engaged in numerous purchases of firearms for other people by falsely representing himself as the actual buyer of the firearms, and that records related to those illegal firearm transactions and false statements will be found on Cooper's smartphone.

### Cooper's Occupancy of the Subject Residence

By law, a person is required to provide a current residential address when purchasing a firearm from an FFL. The address that Cooper has consistently provided on the ATF Form 4473 during his purchases at local FFLs over the last two years was 25819 26th Place South, Apartment B204, Kent, Washington 98032 (the **Subject Residence**). This is the same residence that Cooper entered at the conclusion of the surveillance

AFFIDAVIT OF CATHERINE COLE – Page 14
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

operation on March 21, 2023, as described above. The **Subject Residence** is also
Cooper's listed Washington Department of Licensing address.

As a result of my training and experience, and through consultation with other
experienced investigators, I know or have reason to believe the following:

a.     That persons who possess firearms commonly store the firearms in
their residences, and in their garage and/or outbuildings located on the property of
their residence, and that it is reasonable to believe that persons who possess firearms
also have other items related to firearms, such as gun cases, ammunition,
ammunition magazines, holsters, spare parts, cleaning equipment, literature relating
to firearms, photographs of firearms and receipts for the purchase of these items;

b.     That persons store and maintain documents and records within their
residences which indicate their occupancy and/or ownership of residences, such as
personal mail, receipts, checkbooks, personal identification documents, notes and
other correspondence, utility bills, financial documents, keys, photographs, leases,
mortgage bills, vehicle registration information, ownership warranties,
photographs of themselves occupying the property and vehicles;

c.     That firearms are not perishable or readily destroyed, but are items
of a continuing nature, have an enduring utility to persons who possess them, and
their possession is typically constant and ongoing, often remaining in one person's
possession for a period sufficient for the person to have access to use. Therefore,
the unlawful possession of firearms is typically an ongoing offense and the
prohibited person in possession of firearms will retain possession for many days,
months, and even years, in their residence, on their person, in a vehicle, or other
storage location;

d.     That even when a person does dispose of, transfer, or sell a firearm,
they often continue to retain evidence of their prior possession of the firearm, such
as gun cases, ammunition, ammunition magazines, holsters, spare parts, cleaning

AFFIDAVIT OF CATHERINE COLE – Page 15
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

1   equipment, literature relating to firearms, photographs of firearms and receipts for

2   the purchase of these items.

3   **CELLULAR PHONES OR WIRELESS COMMUNICATION DEVICES**

4   Cellphones or "Wireless Communication Devices" includes cellular telephones

5   and other devices such as tablets (e.g. iPads and other similar devices) used for voice and

6   data communication through cellular or Wi-Fi signals. These devices send signals

7   through networks of transmitter/receivers, enabling communication with other wireless

8   devices or traditional "land line" telephones. Many such devices can connect to the

9   Internet and interconnect with other devices such as car entertainment systems or

10  headsets via Wi-Fi, Bluetooth or near field communication (NFC). In addition to enabling

11  voice communications, wireless communication devices offer a broad range of

12  capabilities. These capabilities include: storing names and phone numbers in electronic

13  "address books" or "contact lists;" sending, receiving, and storing short message service

14  (SMS) and multi-media messaging service (MMS) text messages and email; taking,

15  sending, receiving, and storing still photographs and moving video; storing and playing

16  back audio files; and storing dates, appointments, and other information on personal

17  calendars.

18  Based upon my training and experience, all these types of information may be

19  evidence of crimes under investigation. Furthermore, this application seeks permission to

20  locate not only electronically stored information that might serve as direct evidence of the

21  crimes described on the warrant, but also forensic evidence that establishes how the

22  Target Phone was used, the purpose of its use, who used it, and when. All of these types

23  of information could constitute forensic evidence as well. Stored e-mails and text

24  messages not only may contain communications related to crimes, but also help identify

25  the participants in those crimes. Address books and contact lists may help identify co-

26  conspirators. Similarly, photographs on a cellular telephone may help identify co-

27  conspirators, either through his or her own photographs, or through photographs of

28  friends, family, and associates. Digital photographs also often have embedded location

AFFIDAVIT OF CATHERINE COLE – Page 16
USAO No. 2023R00390

1    data GPS information that identifies where the photo was taken. This location

2    information is helpful because, for example, it can show where co-conspirators meet,

3    where they travel, and where assets might be located. Calendar data may reveal the

4    timing and extent of criminal activity.

5         A cellphone used for cellular voice communication will also typically contain a

6    "call log" or "stored list of recent, received, sent or missed calls" which records the

7    telephone number, date, and time of calls made to and from the phone. The stored list of

8    recent received, missed, and sent calls is important evidence. It identifies telephones

9    recently in contact with the telephone user and may help identify co-conspirators,

10   establish a timeline of events and/or identify who was using the phone at any particular

11   time.

12        In addition, wireless communication devices will typically have an assigned

13   number and identifying serial number such as an ESN, MIN, IMSI, or IMEI number that

14   identifies the particular device on any network. This identifying information may also

15   include the device's assigned name (as assigned by the user) and network addresses such

16   as assigned IP addresses and MAC addresses. I know based on my training and

17   experience that such information may be important evidence of who used a device, when

18   it was used, and for what purposes it may have been used. This information can be used

19   to obtain toll records and other subscriber records, to identify contacts by this telephone

20   with other telephones, or to identify other telephones used by the same subscriber or

21   purchased as part of a package.

22        Many wireless communication devices including cellular telephones such as

23   iPhones, iPads, Android phones, and other "smart phones" as well as tablet devices such

24   as Apple iPads may also be used to browse and search the Internet. These devices may

25   browse and search the Internet. These devices may browse and search the internet using

26   traditional web browsers such as Apple's Safari browser or Google's Chrome browser as

27   well as through third-party applications such as Facebook, Twitter and other that also

28   provide the ability to browse and search the Internet. Based on my training and

AFFIDAVIT OF CATHERINE COLE – Page 17
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

1   experience, I know that Internet browsing history may include valuable evidence

2   regarding the identity of the user of the device. This evidence may include online user

3   names, account numbers, e-mail accounts, and bank accounts as well as other online

4   services. Internet browsing history may also reveal important evidence about a person's

5   location and search history. Search history is often valuable evidence that may help

6   reveal a suspect's intent and plans to commit a crime or efforts to hide evidence of a

7   crime and may also help reveal the identity of the person using the device.

8        Cellphones and other wireless communication devices are also capable of

9   operating a wide variety of communication application or "Apps" that allow a user to

10   communicate with other devices via a variety of communication channels. These

11   additional communication channels include traditional cellular networks, voice over

12   Internet protocol, video conferencing (such as FaceTime and Skype), and wide variety of

13   messaging applications (such as SnapChat, What'sApp, Signal, Telegram, Viber and

14   iMessage). I know based on my training and experience that here are hundreds of

15   different messaging and conferencing applications available for popular cellular

16   telephones and that the capabilities of these applications vary widely for each application.

17   Some applications include end-to-end encryption that may prevent law enforcement from

18   deciphering the communications without access to the device and the ability to "unlock"

19   the device through discovery of the user's password or other authentication key.

20        Other communication applications transmit communications unencrypted over

21   centralized servers maintained by the service provider and these communications may be

22   obtained from the service provider using appropriate legal process. Other applications

23   facilitate multiple forms of communication including text, voice, and video conferencing.

24   Information from these communication apps may constitute evidence of crimes under

25   investigation to the extent they may reveal communications related to the crime or

26   evidence of who the user of the device was communicating with and when those

27   communications occurred. Information from these communication apps may also reveal

28   alias names used by the device owner that may also lead to the other evidence.

AFFIDAVIT OF CATHERINE COLE – Page 18
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

1    I know based on my training and experience that obtaining a list of all the
2    applications present on a cellphones may provide valuable leads in an investigation. By
3    determining what applications are present on a device, an investigator may conduct
4    follow-up investigation including obtaining subscriber records and logs to determine
5    whether the device owner or operator has used each particular messaging application.
6    This information may be used to support additional search warrants or other legal process
7    to capture those communications and discover valuable evidence.

8    Cellphones and other wireless communication devices may also contain
9    geolocation information where the device was a particular times. Many of these devices
10   track and store GPS and cell-site location data to provide enhanced location based
11   services, serve location-targeted advertising, search results, and other content. Numerous
12   applications available for wireless communication devices collect and store location data.
13   For example, when location services are enabled on a handheld mobile device, many
14   photo applications will embed location data with each photograph taken and stored on the
15   device. Mapping applications such as Google Maps may store location data including
16   lists of locations the user has entered into the application. Location information may
17   constitute evidence of the crimes under investigation because that information may reveal
18   whether a suspect was at or near the scene of a crime at any given moment and may also
19   reveal evidence related to the identity of the user of the device.

20   Based on my training and experience, and research, I know that cellular phones
21   like the Target Phone have capabilities that allow them to function as a wireless
22   telephones, digital camera, portable media player, GPS navigation device, and "PDA." In
23   my training and experience, examining data stored on devices of this type can uncover,
24   among other things, evidence that reveals or suggests who possessed or used the device.
25   In my training and experience, smart phones can act as mini-computers in that they have
26   many of the functionalities of traditional computers.

27   Searching a cellular phone or wireless communication device is frequently
28   different that conducting a search of a traditional computer. Agents and forensic

AFFIDAVIT OF CATHERINE COLE – Page 19
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

1   examiners will attempt to extract the contents of the cellular phone or wireless

2   communication device using a variety of techniques designed to accurately capture the

3   data in a forensically sound manner in order to make data available to search of items

4   authorized by the search warrant. This may involve extracting a bit-for-bit copy of the

5   contents of the device or, if such an extraction is not feasible for any particular device,

6   the search may involve other methods of extracting data from the device, such as copying

7   the device's active user files (known as a logical acquisition) or copying the device's

8   entire file system (known as a file system acquisition). If none of these methods are

9   supported by the combination of tools available to the examiner and the device to be

10   searched, the agents and examiners may conduct a manual search of the device by

11   scrolling through the contents of the device and photographing the results. Based on the

12   foregoing and consistent with Rule 41(e)(2)(B), the warrant I am applying for would

13   permit seizing, imaging, or otherwise copying the Target Phone and would authorize a

14   later review of the media or information consistent with the warrant. The later review

15   may require techniques, including but not limited to computer-assisted scans of the entire

16   medium, that might expose many parts of a hard drive to human inspection in order to

17   determine whether it is evidence described by the warrant.

18         The warrant I am applying for would permit law enforcement to obtain from

19   certain individuals the display of physical biometric characteristics (such as fingerprint,

20   thumbprint, or facial characteristics) in order to unlock devices subject to search and

21   seizure pursuant to this warrant. I seek this authority based on the following:

22         a.     I know from my training and experience, as well as from

23   information found in publicly available materials published by device manufacturers, that

24   many electronic devices, particularly newer mobile devices, offer their users the ability to

25   unlock the device through biometric features in lieu of a numeric or alphanumeric

26   passcode or password. These biometric features include fingerprint scanners and facial

27   recognition features. Some devices offer a combination of these biometric features, and

28   the user of such devices can select which features they would like to utilize.

AFFIDAVIT OF CATHERINE COLE – Page 20
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

1        b.       If a device is equipped with a fingerprint scanner, a user may enable

2   the ability to unlock the device through his or her fingerprints. For example, Apple offers

3   a feature called "Touch ID," which allows a user to register up to five fingerprints that

4   can unlock a device. Once a fingerprint is registered, a user can unlock the device by

5   pressing the relevant finger to the device's Touch ID sensor, which is found in the round

6   button (often referred to as the "home" button) located at the bottom center of the front of

7   the device. The fingerprint sensors found on devices produced by other manufacturers

8   have different names but operate similarly to Touch ID.

9        c.       If a device is equipped with a facial recognition feature, a user may

10  enable the ability to unlock the device through his or her face. For example, Apple offers

11  a facial recognition feature called "Face ID." During the Face ID registration process, the

12  user holds the device in front of his or her face. The device's camera then analyzes and

13  records data based on the user's facial characteristics. The device can then be unlocked if

14  the camera detects a face with characteristics that match those of the registered face.

15  Facial recognition features found on devices produced by other manufacturers have

16  different names but operate similarly to Face ID.

17       d.       In my training and experience, users of electronic devices often

18  enable the aforementioned biometric features because they are considered to be a more

19  convenient way to unlock a device than by entering a numeric or alphanumeric passcode

20  or password. Moreover, in some instances, biometric features are considered to be a more

21  secure way to protect a device's contents. This is particularly true when the users of a

22  device are engaged in criminal activities and thus have a heightened concern about

23  securing the contents of a device.

24       e.       As discussed in this affidavit, based on my training and experience I

25  believe that one or more digital devices will be found during the search. The passcode or

26  password that would unlock the device(s) subject to search under this warrant is not

27  known to law enforcement. Thus, law enforcement personnel may not otherwise be able

28

AFFIDAVIT OF CATHERINE COLE – Page 21
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

1  to access the data contained within the device(s), making the use of biometric features

2  necessary to the execution of the search authorized by this warrant.

3            f.      I also know from my training and experience, as well as from

4  information found in publicly available materials including those published by device

5  manufacturers, that biometric features will not unlock a device in some circumstances

6  even if such features are enabled. This can occur when a device has been restarted,

7  inactive, or has not been unlocked for a certain period of time. For example, Apple

8  devices cannot be unlocked using Touch ID when (1) more than 48 hours has elapsed

9  since the device was last unlocked or (2) when the device has not been unlocked using a

10 fingerprint for 4 hours *and* the passcode or password has not been entered in the last 156

11 hours. Biometric features from other brands carry similar restrictions. Thus, in the event

12 law enforcement personnel encounter a locked device equipped with biometric features,

13 the opportunity to unlock the device through a biometric feature may exist for only a

14 short time.

15      Due to the foregoing, I request that during the execution of the search of any

16 Apple brand device(s) (such as an iPhone or iPad) or Android Device(s) which law

17 enforcement with reasonable particularity believe are in the possession or control of

18 Cooper, for the purpose of attempting to unlock the device(s) via biometric authentication

19 in order to search its contents as authorized by this warrant, law enforcement personnel

20 be authorized: (i) to press the fingers, including thumbs, of Cooper to sensors of the

21 device(s), or (ii) to hold up the device(s) in front of the face of Cooper.

22 **<u>CONCLUSION</u>**

23      Based on the foregoing, I believe there is probable cause that evidence, fruits, and

24 instrumentalities of the crimes of making false statements while purchasing firearms, and

25 conspiracy to commit those crimes, in violation of Title 18, United States Code, Sections

26 922(a)(6), 924(a)(1)(A), and 371 (as described in Attachment B) is contained in the

27 **Subject Residence** and on the **Subject Person** of Dion Jamar Cooper (as described in

28 Attachment A).

AFFIDAVIT OF CATHERINE COLE – Page 22
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970

**<u>REQUEST FOR SEALING</u>**

It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing these documents is necessary because the warrant is relevant to an ongoing investigation, and not all the targets of this investigation will be searched at this time. Furthermore, the targets are not aware of the investigation, or at least of the full scope of the investigation. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness. It could cause some targets to flee or avoid returning to the United States, to destroy or tamper with evidence, to intimate other potential witnesses, or otherwise seriously jeopardize the investigation.

CATHERINE COLE   Digitally signed by CATHERINE COLE
Date: 2023.04.10 11:18:28 -07'00'

Catherine Cole, Special Agent
Alcohol, Tobacco, Firearms, and Explosive (ATF)

The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit on the 11th day of April, 2023.

BRIAN A. TSUCHIDA
United States Magistrate Judge

AFFIDAVIT OF CATHERINE COLE – Page 23
USAO No. 2023R00390

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 981012
(206) 553-7970